UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CORY CURTIS individually, on behalf of the Amazon 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.; THE ADMINISTRATIVE COMMITTEE OF AMAZON.COM, INC. 401(k) SAVINGS PLAN; John and Jane Does 1-30 in their capacities as members of the Administrative Committee,<br><br>Defendants. | NO.<br><br>**CLASS ACTION COMPLAINT** |

## I.   NATURE OF ACTION

1.   Plaintiff Cory Curtis, individually, as a representative of the Class described below, and on behalf of the AMAZON.COM, INC. 401(k) Plan (the "Plan"), brings this action under 29 U.S.C. § 1132 against Defendants AMAZON.COM, INC. ("Amazon"), the Administrative Committee of the Plan (the "Committee"), and John Does 1-30 in their capacities as members of the Committee (collectively, "Defendants"), to remedy Defendants' breaches of fiduciary duties and other violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

2.   As fiduciaries to the Plan, Defendants were obligated at all times to act prudently and for the exclusive benefit of participants and beneficiaries. This Defendants did not do.

CLASS ACTION COMPLAINT - 1
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

3. Plaintiff brings this action to obtain the relief provided under ERISA § 409, 29 U.S.C. § 1109, for losses suffered by the Plan resulting from Defendants' fiduciary breaches and prohibited transactions described below, and for other appropriate equitable and injunctive relief under ERISA § 502(a)(3), 29 U.S.C. U.S.C. § 1102(a)(3).

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA, 29 U.S.C. § 1132(a)(2), (a)(3) and (c)(1) for which federal district courts have exclusive jurisdiction under 29 U.S.C. § 1132(e)(1).

5. Venue is proper in this judicial district pursuant to ERISA Section 502(e), 29 U.S.C. § 1132(e) and 28 U.S.C. § 1391, because Plaintiff lives in this District, worked for Defendant Amazon in this District, a substantial part of the events or omissions giving rise to the claims occurred here, and Defendant is headquartered in this District in Seattle, Washington.

## III. THE PARTIES

6. At all relevant times, Plaintiff Cory Curtis ("Curtis"), by virtue of his employment with Amazon and participation in the Plan, is or may become eligible to receive additional benefits under the Plan as a result of Defendants' breaches and ERISA violations. Thus, Curtis is a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).

7. The Amazon Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34) and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a).

8. Defendant Amazon is a massive global corporation with over 1 million employees in the United States alone.

9. At all relevant times, Defendant Amazon is the sponsor of the Plan per ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B); a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C); and a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(2)(A), to the extent that it appointed members of the Committee and otherwise exercised discretion over the administration and management of the Plan and/or control of Plan assets.

CLASS ACTION COMPLAINT - 2
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

10. At all relevant times, Defendant the Committee was the Plan administrator under ERISA § 3(16), 29 U.S.C. § 1002(16); a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A); and Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that it had or exercised discretion over the administration or management of the Plan and/or control of Plan assets.

11. At all relevant times, Defendants John Does 1-30, as members of the Committee, were parties-in-interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), and fiduciaries of the Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that they had or exercised discretionary authority respecting the administration or management of the Plan, and/or control of Plan assets. Plaintiff will seek leave to amend the Complaint to name each of these John Does once he ascertains their identities in discovery. The Committee and John Does 1-30 will be referred to collectively as the "Committee."

12. Hereafter, anyone who exercised discretion over the administration and management of the Plan and/or control of Plan assets will be referred to as "Plan Fiduciaries" or "Defendants."

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

13. The Plan is a defined contribution plan that covers eligible employees of Amazon.com Services, Inc. and participating subsidiaries of Amazon.com, Inc. (collectively, "Company"). The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA). The Company is the Sponsor of the Plan under ERISA.

14. In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

15. As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

CLASS ACTION COMPLAINT - 3
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

16. Throughout the Class Period prior to January 7, 2020, the Plan incurred administrative expenses through paying Vanguard Fiduciary Trust Company (Vanguard) both direct and indirect compensation to provide administrative services to the Plan.

17. Effective January 7, 2020, the Plan's assets were transferred from Vanguard to Fidelity and the Plan incurred administrative expenses through paying Fidelity both direct and indirect compensation to provide administrative services to the Plan. As of the end of 2023 the Plan's recordkeeper was still Fidelity.

18. At some point in 2023 the Plan incurred Plan administration expenses through paying Strategic Advisors (an affiliate of Fidelity) direct compensation to provide Plan administration services to the Plan.

19. The deduction of Plan administration fees from the Participants' accounts reduces the funds available to Participants for distribution and/or investing and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

20. Throughout the Class Period, the Plan has been funded by a combination of wage withholdings by Plan Participants and Company matching contributions, each of which is deposited into the Plan's trust fund and allocated to individual Participant accounts.

21. Throughout the Class Period, the terms of the Plan document require Company to make matching contributions to the Plan based on each Participant's contributions.

22. Company must pay all matching contributions that have accrued throughout a calendar year to the Plan trustee within a reasonable period of time after the end of the prior calendar year, at the latest.

23. Upon their deposit into the Plan's trust fund, all Participant contributions and Company contributions become assets of the Plan.

24. Under the terms of the Plan, Participants are immediately vested in their own contributions, as well as any actual earnings thereon and 100% vested in Company matching contributions and any actual earnings on such amounts after three years of service.

CLASS ACTION COMPLAINT - 4
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

25.     To the extent a Participant is not 100% vested upon termination of employment, the Participant forfeits Company contributions in his or her account on the earlier of the date the Participant takes a distribution of his or her vested interest in the Plan or the date the Participant incurs a five-consecutive-year break in vesting service (within the meaning of the Plan document).

26.     The Plan document gives the Plan Fiduciaries discretion to use Plan assets that have been forfeited by Plan participants for one of three purposes: (i) reduce future matching contributions; (ii) pay Plan administrative expenses; or (iii) restore forfeited accounts.

27.     When making the decision regarding the use of Plan forfeitures, the Plan Fiduciaries have been and are required by 29 U.S. Code § 1104 to discharge [their] duties with respect to a plan *solely* in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan.

28.     Accordingly, as explicitly provided in 29 U.S.C. § 1002(34), the Plan Fiduciaries also had the discretion to allocate "forfeiture of accounts of other participants" to Plan Participants.

29.     During 2018, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $21,343,000 in forfeitures to offset Company contributions instead of allocating forfeitures to pay the Plan's administrative expenses (e.g., recordkeeping fees, investment management fees, and transaction fees) or allocating the forfeitures back to eligible Plan participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

30.     During 2018, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use forfeitures to pay administrative expenses, e.g., recordkeeping fees for terminated participants and transaction fees deducted from net assets available for benefits in the amount of $961,000 for the year ended December 31, 2018.

31.     On December 31, 2018, unallocated forfeitures were $5,697,000.

CLASS ACTION COMPLAINT - 5
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

32. During 2018, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $5,697,000 that remained unallocated at the end of the year to pay Plan administrative expenses, e.g., recordkeeping fees for terminated participants and transaction fees deducted from net assets available for benefits in the amount of $961,000 for the year ended December 31, 2018.

33. During 2018, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $5,697,000 in a timely fashion to avoid having unallocated forfeitures of $5,697,000 on December 31, 2018.

34. During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated forfeitures of $5,697,000 carried over from 2018 in a timely fashion to pay the Plan's administrative expenses or to allocate the forfeitures back to eligible Plan participants in accordance with a definite formula defined in the Plan.

35. During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $33,882,000 in forfeitures to offset Company contributions instead of allocating forfeitures to pay the Plan's administrative expenses or allocating the forfeitures back to eligible Plan participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

36. During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use forfeitures to pay administrative expenses, e.g., recordkeeping fees for terminated participants and transaction fees deducted from net assets available for benefits in the amount of $1,252,000 for the year ended December 31, 2019.

37. On December 31, 2019, unallocated forfeitures were $511,000.

38. During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $511,000 that remained unallocated at the end of the year to pay the Plan's administrative expenses, e.g., recordkeeping fees for terminated participants and transaction fees deducted from net assets available for benefits in the amount of $1,252,000 for the year ended December 31, 2019.

CLASS ACTION COMPLAINT - 6
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

39. During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $511,000 in a timely fashion to avoid having unallocated forfeitures of $511,000 on December 31, 2019.

40. During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated forfeitures of $511,000 carried over from 2019 in a timely fashion to pay Plan administrative expenses or to allocate the forfeitures back to eligible Plan participants in accordance with a definite formula defined in the Plan.

41. During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $37,000,000 in forfeitures to offset Company contributions instead of allocating forfeitures to pay the Plan's administrative expenses or allocating the forfeitures back to eligible Plan participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

42. During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use forfeitures to pay administrative expenses, e.g., recordkeeping fees for terminated participants and transaction fees deducted from net assets available for benefits in the amount of $2,000,600 for the year ended December 31, 2020.

43. On December 31, 2020, unallocated forfeitures were $2,905,000.

44. During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $2,905,000 that remained unallocated at the end of the year to the Plan's administrative expenses for terminated participants and transaction fees deducted from net assets available for benefits in the amount of $2,000,600 for the year ended December 31, 2020.

45. During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $2,905,000 in a timely fashion to avoid having unallocated forfeitures of $2,905,000 on December 31, 2020.

46. During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated forfeitures of $2,905,000 carried over from 2020 in a

CLASS ACTION COMPLAINT - 7
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

timely fashion to pay the Plan's administrative expenses or to allocate the forfeitures back to eligible Plan participants in accordance with a definite formula defined in the Plan.

47. During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $68,000,000 in forfeitures to offset Company contributions instead of allocating forfeitures to pay the Plan's administrative expenses or allocating the forfeitures back to eligible Plan participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

48. During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use forfeitures to pay the Plan's administrative expenses, e.g., recordkeeping fees for terminated participants and transaction fees deducted from net assets available for benefits in the amount of $3,533,000 for the year ended December 31, 2021.

49. On December 31, 2021, unallocated forfeitures were $16,621,000.

50. During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $16,621,000 that remained unallocated at the end of the year to pay the Plan's administrative expenses for terminated participants and transaction fees deducted from net assets available for benefits in the amount of $3,533,000 for the year ended December 31, 2021.

51. During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $16,621,000 in a timely fashion to avoid having unallocated forfeitures of $16,621,000 on December 31, 2021.

52. During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated forfeitures of $16,621,000 carried over from 2021 in a timely fashion to pay the Plan's administrative expenses or to allocate the forfeitures back to eligible Plan participants in accordance with a definite formula defined in the Plan.

53. During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $102,000,000 in forfeitures to offset Company contributions instead of allocating forfeitures to pay the Plan's administrative expenses or allocating the

CLASS ACTION COMPLAINT - 8
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

forfeitures back to eligible Plan participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

54. During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use forfeitures to pay administrative expenses, e.g., recordkeeping fees for terminated participants and transaction fees deducted from net assets available for benefits in the amount of $5,372,000 for the year ended December 31, 2022.

55. On December 31, 2022, unallocated forfeitures were $34,466,000.

56. During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $34,466,000 that remained unallocated at the end of the year to pay the Plan's administrative expenses for terminated participants and transaction fees deducted from net assets available for benefits in the amount of $5,372,000 for the year ended December 31, 2022.

57. During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $34,466,000 in a timely fashion to avoid having unallocated forfeitures of $34,466,000 on December 31, 2022.

58. During 2023, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated forfeitures of $34,466,000 carried over from 2022 in a timely fashion to pay the Plan's administrative expenses or to allocate the forfeitures back to eligible Plan participants in accordance with a definite formula defined in the Plan.

59. During 2023, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $86,836,000 in forfeitures to offset Company contributions instead of allocating forfeitures to pay the Plan's administrative expenses or allocating the forfeitures back to eligible Plan participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

60. During 2023, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use forfeitures to pay administrative expenses, e.g., recordkeeping fees for

CLASS ACTION COMPLAINT - 9
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  terminated participants and transaction fees deducted from net assets available for benefits in
2  the amount of $4,915,000 for the year ended December 31, 2023.

3        61.     On December 31, 2023, unallocated forfeitures were $27,810,000.

4        62.     During 2023, the Plan Fiduciaries exercised discretion over, and control of, Plan
5  assets by failing to use unallocated forfeitures of $27,810,000 that remained unallocated at the
6  end of the year to pay the Plan's administrative expenses for terminated participants and
7  transaction fees deducted from net assets available for benefits in the amount of $4,915,000
8  for the year ended December 31, 2023.

9        63.     During 2023, the Plan Fiduciaries exercised discretion over, and control of, Plan
10 assets by failing to use unallocated forfeitures of $27,810,000 in a timely fashion to avoid
11 having unallocated forfeitures of $27,810,000 on December 31, 2023.

12       64.     Under the terms of the Plan and the provisions of ERISA, throughout the Class
13 Period Defendants exercised discretion over, and control of, Plan assets when directing the use
14 of Plan forfeitures.

15       65.     Under the terms of the Plan and the provisions of ERISA, throughout the Class
16 Period the Plan Fiduciaries were required to make their determination of which of several
17 alternatives to choose *solely* in the interest of the participants and beneficiaries **and for the**
18 **exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying**
19 **reasonable expenses** of administering the plan.

20       66.     As described in detail above, throughout the Class Period, the Plan Fiduciaries'
21 decisions to use Plan forfeitures to reduce employer contributions was in the best interest of
22 Company because that option decreased Company's own contribution costs.

23       67.     As described in detail above, throughout the Class Period, the Plan Fiduciaries
24 exercised discretion over, and control of, Plan assets when directing the use of terminated
25 Participants' accounts to pay administrative fees to Vanguard and/or Fidelity.

CLASS ACTION COMPLAINT - 10
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

68. As described in detail above, throughout the Class Period, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when failing to use forfeitures to cover indirect compensation paid to Vanguard and/or Fidelity for administrative services.

69. There are no facts or circumstances throughout the Class Period that make discretionary decisions to use forfeitures to reduce Company contributions consistent with discharging their duties with respect to the Plan *solely* in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan.

70. As described in detail above, throughout the Class Period, Defendants (Plan Fiduciaries) exercised discretion over, and control of, Plan assets and consistently and reflexively chose to use the forfeitures for their own interest, to the detriment of the Plan and Plan Participants, by allocating Plan forfeitures toward reducing the Company's outstanding and unpaid contributions owing to the Plan.

71. All else being equal, had the Plan Fiduciaries decided throughout the Class period to use Plan forfeitures to defray the reasonable expense of administering the Plan or allocated the Plan forfeitures back to eligible participants, the value of the Plan and the value of the accounts of the Plan participants would have been greater thereby providing greater retirement benefits to Plan Participants.

72. Had the Plan Fiduciaries exercised discretion over the forfeited plan assets *solely* in the interest of the participants and beneficiaries, the Plan Fiduciaries would have chosen to use Plan forfeitures to defray the reasonable expense of administering the Plan or allocated the forfeitures back to eligible participants.

V. CLASS ALLEGATIONS

73. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

CLASS ACTION COMPLAINT - 11
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

74. In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiff seeks to certify this action as a class action on behalf of all Amazon Plan participants and beneficiaries. Plaintiff seeks to certify the following class:

> All participants and beneficiaries of the Amazon Plan from January 1, 2018 through the date of judgment, excluding Defendants and members of the Committee.

75. This action meets the requirements of Rule 23 and is certifiable as all class action for the following reasons:

   a. The class includes over 20,000 members and is so large that joinder of all its members is impracticable.

   b. There are questions of law and fact common to the class because Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions alleged herein as to the Plan and not as to any individual participant. Thus, common questions of law and fact include the following, without limitation: Who are the Fiduciaries liable for the remedies provided by 29 U.S.C. § 13 1109(a)? Did the Fiduciaries of the Plan breach their fiduciary duties to the Plan with respect to their management and allocation of Plan assets? Did Fiduciaries of the Plan engage in prohibited transactions with Plan assets? What are the losses to the Plan resulting from each alleged breach of ERISA? What Plan-wide equitable and other relief should the Court impose to remedy Defendants' alleged breaches?

   c. Plaintiff's claims are typical of the claims of the class because Plaintiff was a participant of the Plan during the class period and all participants in the Plan were harmed by the same alleged misconduct by Defendants.

CLASS ACTION COMPLAINT - 12
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

        d.      Plaintiff is an adequate representative of the class because he was a participant of the plan during the class period, has no interests that conflict with any other members of the class, is committed to the vigorous representation of the class, and has engaged experienced and competent attorneys to represent the class.

        e.      Prosecution of separate actions for these breaches of fiduciary duties and prohibited transactions by individual participants and beneficiaries would create the risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to their discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 13 1109(a), and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties, prohibited transactions, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

76.    A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions and the common questions of law and facts predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

CLASS ACTION COMPLAINT - 13
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

77. Plaintiff is represented by counsel experienced in prosecuting ERISA class actions and with particular experience and expertise in litigation involving ERISA breaches of fiduciary duty and ERISA prohibited transactions.

**FIRST CLAIM**
**BREACH OF THE DUTY OF LOYALTY**
**(29 U.S.C. 1104(a)(1)(A))**

78. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

79. When exercising discretion and control over forfeitures and using them to reduce Company contributions, the Plan Fiduciaries considered the best interest of Company as opposed to Plan participants, in violation of ERISA.

80. Alternatively, when exercising discretion and control over forfeitures and failing to use them to defray the reasonable costs of administering the Plan, the Plan Fiduciaries considered the best interests of Company, as opposed to Plan Participants, in violation of ERISA.

81. As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which they are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

82. Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

83. Plaintiff has suffered Losses as a direct result of Defendants' breach of their duty of loyalty.

CLASS ACTION COMPLAINT - 14
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**SECOND CLAIM**
**BREACH OF THE DUTY OF PRUDENCE**
**(29 U.S.C. 1104(a)(1)(B))**

84. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

85. When exercising discretion and control over forfeitures and using them to reduce Company contributions, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan, in violation of ERISA.

86. In deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited funds in the Plan to reduce the Company's own contribution expenses, as opposed to the administrative expenses charged to participant accounts, was in the best interest of the Plan's participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.

87. By refusing to use forfeited funds in the Plan to eliminate the administrative expenses charged to participant accounts, and instead deciding to use these Plan assets to reduce the Company's own contribution expenses, Defendants caused the Plan to receive fewer contributions that would otherwise have increased Plan assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plan expenses.

88. Had the Defendants conformed with the minimum standard of care required under ERISA, Defendants would not have used forfeitures to reduce Company contributions.

CLASS ACTION COMPLAINT - 15
CASE NO.

Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

89. Alternatively, had the Defendants conformed with the minimum standard of care required under ERISA, they would have used forfeitures to defray reasonable expenses of administering the Plan.

90. Plaintiff has suffered Losses as a direct result of Defendants' breach of their duty of prudence.

## THIRD CLAIM
### SELF DEALING / PROHIBITED TRANSACTIONS
### (29 U.S.C. 1106(B)(1))

91. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

92. 29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

93. Defendants violated this prohibition in their management and control of forfeiture funds in the Plan. By allocating these Plan assets toward offsetting the Company's outstanding and unpaid matching contributions owing to the Plan, thereby saving the Company millions of dollars in contribution expenses, Defendants dealt with the assets of the Plan in their own interest and for their own account.

94. As a result of this prohibited conduct, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and the lost investment returns on those assets.

95. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

CLASS ACTION COMPLAINT - 16
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**PRAYER FOR RELIEF**

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

a) find and declare that Defendants have breached their fiduciary duties and engaged in prohibited conduct and transactions as described above;

b) find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

c) order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;

d) determine the method by which Plan losses under 29 U.S.C. §1109 should be calculated;

e) order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

f) remove the Fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

g) surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

h) certify the class, appoint Plaintiff as a class representative, and appoint the Law Office of Paul Sharman and Terrell Marshall Law Group as class counsel;

i) award to Plaintiff and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

j) order the payment of interest to the extent it is allowed by law; and

k) grant other equitable or remedial relief as the Court deems appropriate.

CLASS ACTION COMPLAINT - 17
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

RESPECTFULLY SUBMITTED AND DATED this 30th day of December, 2024.

TERRELL MARSHALL LAW GROUP PLLC

By: */s/ Beth E. Terrell*
    Beth E. Terrell, WSBA No. 26759
    Email: bterrell@terrellmarshall.com

By: */s/ Jennifer Rust Murray*
    Jennifer Rust Murray, WSBA No. 36983
    Email: jmurray@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

THE SHARMAN LAW FIRM LLC

Paul J. Sharman, *Pro Hac Vice Forthcoming*
Email: paul@sharman-law.com
11175 Cicero Drive, Suite 100
Alpharetta, Georgia 30022
Telephone: (678) 242-5297
Facsimile: (678) 802-2129

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 18
CASE NO.