The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CORY CURTIS and JONATHAN TORRES, individually, on behalf of the Amazon 401(k) Savings Plan, and on behalf of all similarly situated participants and beneficiaries of the Plan,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC; 401(k) COMMITTEE; John and Jane Does 1-30 in their capacities as members of the 401(k) Committee,<br><br>Defendants. | No. 2:24-cv-02164-RSM<br><br>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT<br><br>NOTE ON MOTION CALENDAR: July 18, 2025 |

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................................ 1

II.    FACTUAL BACKGROUND ......................................................................................... 2

       A.    The Plan ............................................................................................................. 2

       B.    The Treatment of Forfeited Benefits Under the Plan ......................................... 3

       C.    Plaintiffs' Claims .............................................................................................. 4

III.   LEGAL STANDARD ..................................................................................................... 5

IV.    ARGUMENT .................................................................................................................. 6

       A.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty. ........................... 6

             1.    ERISA Does Not Require Forfeitures to Be Used to Pay
                   Administrative Expenses. .......................................................................... 6

                   a.    ERISA Imposes No Fiduciary Obligation to Maximize
                         Pecuniary Benefits. ........................................................................ 7

                   b.    Plaintiffs' Theory of Fiduciary Duties Contravenes
                         Legislative and Administrative History. ........................................ 9

                   c.    Plaintiffs' Theory of Fiduciary Duties Would Force
                         Defendants to Violate the Terms of the Plan. ............................. 12

             2.    Plaintiffs Have Alleged No Nonconclusory Facts to Support Their
                   Breach of Fiduciary Duty Claims. ........................................................... 13

                   a.    Plaintiffs Have Pled No Facts that Plausibly Support Their
                         Disloyalty Claim. ......................................................................... 13

                   b.    Plaintiffs Have Pled No Facts in Support of Their
                         Imprudence Claim. ....................................................................... 15

                   c.    Defendants' Purported Failure to Allocate Forfeitures by
                         Year-End Does Not Support a Claim. .......................................... 16

             3.    Plaintiffs' Theory Does Not Implicate Defendants' Fiduciary
                   Duties. ...................................................................................................... 17

                   a.    Funding a Plan Is a Settlor, Not a Fiduciary, Function. ............... 17

                   b.    Plaintiffs' Invocation of Defendants' "Allocation"
                         Decisions Does Not Cure Their Pleading Deficiencies. .............. 18

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

4. Plaintiffs Have Not Alleged a Plan Injury. ................................................ 19

B. Plaintiffs Fail to State a Claim for Violation of ERISA's Prohibited Transactions Provisions. ................................................................................ 21

V. CONCLUSION ........................................................................................................ 23

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Brain*,
910 F.3d 502 (9th Cir. 2018) ...............................................................................13, 17

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
465 F.3d 1123 (9th Cir. 2006) ....................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................5

*Barragan v. Honeywell Int'l Inc.*,
2024 WL 5165330 (D.N.J. Dec. 19, 2024) ...................................................................8

*Black v. Greater Bay Bancorp. Exec. Supp. Comp. Benefits Plan*,
2017 WL 8948732 (N.D. Cal. Jan. 18, 2017) ..............................................................21

*Bozzini v. Ferguson Enters. LLC*,
2025 WL 1547617 (N.D. Cal. May 29, 2025) .........................................................8, 23

*CFTC v. Schor*,
478 U.S. 833 (1986).....................................................................................................11

*Chakravarty v. Peterson*,
2021 WL 1063312 (W.D. Wash. Mar. 19, 2021) ..........................................................5

*Chao v. Hagemeyer N. Am., Inc.*,
2006 WL 8443663 (D.S.C. Oct. 20, 2006) ...................................................................22

*In re Citigroup ERISA Litig.*,
2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ..............................................................19

*Coulter v. Morgan Stanley & Co.*,
753 F.3d 361 (2d Cir. 2014)................................................................................13, 15, 18

*Diaz v. Westco Chems., Inc.*,
2023 WL 3615663 (9th Cir. May 24, 2023) .................................................................20

*Dimou v. Thermo Fisher Sci. Inc.*,
2024 WL 4508450 (S.D. Cal. Sept. 19, 2024).......................................1, 2, 6, 8, 11, 22, 23

*Douglas v. Xerox Bus. Servs., LLC*,
875 F.3d 884 (9th Cir. 2017) .......................................................................................11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ................................................................................................12

*Gagliano v. Reliance Standard Life Ins. Co.*,
    547 F.3d 230 (4th Cir. 2008) ....................................................................................7

*Hall v. Hill Refrigeration, Inc.*,
    36 F. Supp. 2d 1185 (C.D. Cal. 1999) ...............................................................17, 18

*Harris v. Amgen, Inc.*,
    738 F.3d 1026 (9th Cir. 2006) ..................................................................................5

*Horvath v. Keystone Health Plan E., Inc.*,
    333 F.3d 450 (3d Cir. 2003) ....................................................................................20

*Hutchins v. HP Inc.*,
    2025 WL 404594 (N.D. Cal. Feb. 5, 2025) ..................................................... *passim*

*Hutchins v. HP Inc.*,
    737 F. Supp. 3d 851 (N.D. Cal. 2024) .....................................................1, 2, 6, 8, 12

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) .................................................................................................19

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) ..................................................................................7, 17, 21, 22

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) .....................................................................................8

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
    2025 WL 1299002 (C.D. Cal. May 2, 2025) .......................................................8, 22

*Mass Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ...................................................................................................7

*McDaniel v. Chevron Corp.*,
    203 F.3d 1099 (9th Cir. 2000) .................................................................................16

*McManus v. Clorox Co.*,
    2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) ............................................................7

*McManus v. Clorox Co.*,
    2025 WL 732087 (N.D. Cal. Mar. 3, 2025) .............................................................15

*Munro v. Univ. of S. Calif.*,
    896 F.3d 1088 (9th Cir. 2018) .................................................................................19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ...............................................................................................5

*Perez-Cruet v. Qualcomm Inc.*,
    2024 WL 2702207 (S.D. Cal. May 24, 2024)......................................................................12

*Petroff v. Ret. Benefit Plan of Am. Airlines, Inc.*,
    2015 WL 13917970 (C.D. Cal. July 28, 2015)....................................................................14

*Reynolds v. Edison Int'l*,
    238 F.3d 430 (9th Cir. 2000) .............................................................................................18

*Rodriguez v. Intuit Inc.*,
    744 F. Supp. 3d 935 (N.D. Cal. 2024) ...............................................................................12

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
    2025 WL 1248922 (D. Ariz. Apr. 30, 2025) .........................................................2, 8, 13, 22

*In re Sorrento Therapeutics, Inc. Sec. Litig.*,
    2022 WL 22609807 (S.D. Cal. Apr. 11, 2022).....................................................................5

*Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Lcl. 1M Health &*
    *Welfare Plan v. Bjorkedal*,
    516 F.3d 719 (8th Cir. 2008) .............................................................................................18

*In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) ..............................................................................19

**Statutes**

29 U.S.C. § 1002...............................................................................................................3, 10

29 U.S.C. § 1104....................................................................................................................12

29 U.S.C. § 1106....................................................................................................................21

**Other Authorities**

26 C.F.R. § 1.401-7.................................................................................................................9

26 C.F.R. § 1.401(m)-1 .....................................................................................................10, 14

83 Fed. Reg. 34,469 (Jul. 20, 2018)........................................................................................10

88 Fed. Reg. 12,282 (Feb. 27, 2003) ..............................................................................9, 11, 17

Fed. R. Civ. P. 12....................................................................................................................5

Rev. Rul. 71-313, 1971-2 C.B. 203, 1971 WL 26693 (1971) .......................................................9

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC") once again seeks to bar the longstanding practice—acknowledged by Congress, the U.S. Treasury Department, and the U.S. Department of Labor ("DOL")—of using benefits forfeited by participants in a 401(k) plan to provide benefits to other participants as employer contributions.  Plaintiffs' misreading of ERISA, which posits that it is *illegal* to use forfeitures to cover the cost of employer contributions, flies in the face of this well-established practice as well as basic tenets of ERISA jurisprudence.

To be clear, there is no dispute that participants in Defendants' retirement plan—the Amazon 401(k) Plan (the "Amazon Plan" or the "Plan")—have received all of the benefits they are due under the terms of the Plan.  Instead, Plaintiffs assert that Defendants had a fiduciary obligation to try to coerce the Plan's sponsor, Amazon.com Services LLC ("Amazon" or the "Company"), to contribute *more* money to the Plan by allocating forfeitures to cover the cost of the Plan's expenses and/or by granting extra benefits to participants that are not mentioned in the Plan document.  This theory of liability has been rejected by nearly every court that has considered it.  *See, e.g.*, *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024).  As these courts have recognized, Plaintiffs' theory imposes an "unqualified duty" on employers to provide benefits that are not contemplated by the terms of a plan, contradicting well-established precedents.  *Id.* at 863.  The theory also contravenes "the settled understanding of Congress and the Treasury Department, which have historically allowed the use of forfeitures … to reduce employer contributions."  *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024).

Even crediting Plaintiffs' misreading of ERISA, Plaintiffs' SAC fails to allege any well-pleaded facts in support of their overbroad interpretation of the statute.  For example, Plaintiffs contend that Defendants face a "conflict of interest" in administering the Plan because Defendants are purportedly incentivized to release Amazon from its "obligation[s]" to fund the Plan.  *See, e.g.*, SAC ¶¶ 45, 59–62.  But Amazon has no such funding "obligation[s]."  Plaintiffs' conflicting argument rests on a misreading of the Plan document, which—contrary to Plaintiffs'

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 1

assertion—permits Amazon to fund the Plan through the use of forfeitures, which is precisely what Amazon has allegedly done.

Plaintiffs' breach of fiduciary duty claims also fail because their claims do not implicate Defendants' fiduciary duties.  As the SAC makes clear, the crux of Plaintiffs' claims is that Defendants "caused" Amazon to make "fewer contributions" to the Plan.  *Id.* ¶ 220.  But determining the amount of money that an employer contributes to a plan is a *settlor* decision that does not implicate an administrator's fiduciary duties.  *See Hutchins v. HP Inc.*, 2025 WL 404594, at *4 (N.D. Cal. Feb. 5, 2025) ("HP *acting as settlor* determines whether, in a given year, Plan expenses will be paid by HP or charged to Plan participants' accounts"; the plan's fiduciary might work to implement this decision, but "HP (as fiduciary) will only use … forfeitures to pay Plan expenses if HP (as settlor) decided that year that the Plan administrator should use at least some forfeitures to pay Plan expenses.").  Nor have Plaintiffs alleged any facts to show that Defendants caused—or could have caused—Amazon to make "fewer contributions" to the Plan, rendering their theory of injury entirely speculative.

Finally, Plaintiffs allege that Defendants violated ERISA's prohibited transactions provisions by using forfeitures to pay benefits instead of expenses.  Using plan assets to pay benefits, however, is not a "transaction" prohibited under ERISA.  Other courts have reached the same conclusion.  *See, e.g.*, *Hutchins*, 737 F. Supp. 3d at 867–69; *Dimou*, 2024 WL 4508450, at *11; *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 2025 WL 1248922, at *5–6 (D. Ariz. Apr. 30, 2025).

For these and other reasons, Plaintiffs' SAC should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    The Plan

The Amazon Plan is a defined contribution plan funded by a combination of participant and employer contributions.  SAC ¶ 24, 44.  The Plan's assets are held in a dedicated trust fund and allocated to individual participant accounts.  *Id.* ¶¶ 32–33.  A participant's benefit under the Plan consists of the participant's contributions to his account, the Company's contributions to his

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

account, and "any income, expenses, gains and losses, and … forfeiture[s]" that may be allocated to his account. *Id.* ¶ 33; *see also* 29 U.S.C. § 1002(34).

Under the terms of the Plan, the Company serves as Plan sponsor and, in that capacity, performs various "settlor" functions, such as funding the Plan. SAC ¶ 31. The 401(k) Committee (the "Committee") serves as the Plan administrator and is charged with the "administration or management of the Plan." *Id.* ¶ 27. Plaintiffs allege that the Committee shares its responsibilities with Does 1 through 30, whom Plaintiffs contend have "discretionary authority respecting the administration or management of the Plan." *Id.* ¶ 29.

Like all 401(k) plans, the Amazon Plan incurs various administrative expenses, including expenses related to recordkeeping, advisory services, and legal fees. *Id.* ¶¶ 34–36. Under the terms of the Plan, the Company may elect to pay the Plan's expenses, or alternatively, expenses may be charged to participants' accounts. Declaration of Laura Flahive Wu ("Wu Decl."), Ex. 1 (2018 Plan), § 16.5; Ex. 2 (2020 Plan), § 16.5; Ex. 3 (2021 Plan), § 16.5; Ex. 4 (2022 Plan), § 16.5; Ex. 5 (2023 Plan), § 16.5. Between 2018 and 2023, the Company elected to pay the "recordkeeping fees … and other administrative expenses of the Plan" for "active [Plan] participants." Request for Judicial Notice, Ex. 1 (2018 Form 5500, Notes to Financial Statements), at 7; Ex. 2 (2019 Form 5500, Notes to Financial Statements), at 7; Ex. 3 (2020 Form 5500, Notes to Financial Statements), at 8; Ex. 4 (2021 Form 5500, Notes to Financial Statements), at 10; Ex. 5 (2022 Form 5500, Notes to Financial Statements), at 10; Ex. 6 (2023 Form 5500, Notes to Financial Statements), at 10. Amazon deducted such expenses from terminated participants' accounts. *See id.*

## B.    The Treatment of Forfeited Benefits Under the Plan

Participants in the Amazon Plan are immediately vested in any amounts they contribute to their individual accounts. SAC ¶ 49. Participants become fully vested in *the Company's* contributions to their accounts after three years of benefit service. *Id.*

When a participant has a break in service prior to fully vesting in his account, the Plan specifies that the participant forfeits any unvested Company contributions that have been

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 3

allocated to his account. *Id.* ¶ 50. These *old* Company contributions remain in the Plan's trust fund, where they can be reallocated. Pursuant to the terms of the Plan, forfeited contributions can be reallocated for one of three purposes: (1) to pay benefits and thereby "reduce future Employer Contributions" to the Plan; (2) to "reduce Plan administrative fees and expenses"; or (3) to "restore Accounts of reemployed Former Participants." Wu Decl., Ex 1 § 9.5; Ex. 2 § 9.5; Ex. 3 § 9.5; Ex. 4 § 9.5; Ex. 5 § 9.5. The Plan does not permit forfeitures to be used to increase participants' benefits, beyond what they have been promised under the terms of the Plan.

Between 2018 and 2023, participants' accounts were allocated contributions in amounts "equal to 50% of such eligible Participant's Elective Deferral Contributions," with a maximum contribution amount eligible to be matched not to "exceed 4% of such Participant's Compensation for such Plan Year." Wu Decl., Ex. 1 § 6.1(b); Ex. 2 § 6.1(b); Ex. 3 § 6.1(b); Ex. 4 § 6.1(b); Ex. 5 § 6.1(b). As is clear from the Plan's Form 5500 filings, the Company's annual matching contributions were composed of (i) "new money" the Company contributed to the Plan that year; and (ii) forfeitures—*i.e.*, "old money" the Company previously contributed and that non-vested participants forfeited by terminating their employment with Amazon. Request for Judicial Notice, Ex. 1, at 5–6; Ex. 2, at 5–6; Ex. 3, at 5–6; Ex. 4, at 7–8; Ex. 5, at 8–9; Ex. 6, at 8. Through a combination of new and old contributions, participants received all of the benefits they were due under the terms of the Plan; Plaintiffs do not allege otherwise.

### C.    Plaintiffs' Claims

Plaintiffs purport to be former Amazon employees who, "[a]t all relevant times," have "had … individual account[s]" that are "part of the [Amazon] Plan." SAC ¶¶ 6, 9, 15, 18. Plaintiff Curtis filed an initial complaint on December 30, 2024 and a first amended complaint ("FAC") on March 3, 2025. Dkts. 1 & 18. Plaintiffs Curtis and Torres filed the SAC on April 14, 2025. Dkt. 27.

In their SAC, Plaintiffs challenge Defendants' allocation of forfeited Company contributions in the Plan's trust fund to pay benefits that participants were promised under the terms of the Amazon Plan. Plaintiffs claim that Defendants should *not* have used forfeitures for

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 4

this purpose, but instead used forfeitures to pay the Plan's administrative expenses and/or to provide participants with *additional* benefits that were *not* promised under the terms of the Plan. According to Plaintiffs, Defendants' decision to use forfeitures to pay promised benefits "caused the Plan to receive fewer contributions" from the Company "that would otherwise have increased Plan assets." SAC ¶ 220. Plaintiffs also challenge the timing of Defendants' allocation decisions, arguing that Defendants breached their fiduciary duties by failing to allocate all of the forfeitures in the Plan's trust fund before the end of the calendar year. *Id.* ¶¶ 224–27.

Plaintiffs bring four claims based on Defendants' allocation of forfeitures: (i) two claims for breach of fiduciary duty; and (ii) two claims for violation of ERISA's prohibited transactions provisions. All of these claims lack merit and should be dismissed.

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim for relief that is "plausible on its face" based on "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion, "the Court must accept all material allegations as true," but need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Chakravarty v. Peterson*, 2021 WL 1063312, at *2 (W.D. Wash. Mar. 19, 2021).

Although a court's analysis on a Rule 12(b)(6) motion is generally limited to the allegations in the complaint, the court may consider "documents incorporated into the complaint by reference" as well as "matters of which a court may take judicial notice." *Harris v. Amgen, Inc.*, 738 F.3d 1026, 1035 (9th Cir. 2006). Given Plaintiffs' reliance on the Amazon Plan, the Court may consider the Plan document in connection with this motion. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). Defendants also request that the Court take judicial notice of the Plan's Form 5500 filings, which reflect matters of public record filed with a government agency. *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 2022 WL 22609807, at *4 (S.D. Cal. Apr. 11, 2022) ("[C]ourts in the Ninth Circuit routinely take judicial notice of

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 5

[agency] filings.").  Other courts have considered Form 5500 filings when considering similar breach of fiduciary duty and prohibited transactions claims.  *See, e.g.*, *Hutchins*, 737 F. Supp. 3d at 858; *Dimou*, 2024 WL 4508450, at *6.

## IV.    ARGUMENT

### A.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty.

#### 1.    ERISA Does Not Require Forfeitures to Be Used to Pay Administrative Expenses.

Plaintiffs' breach of fiduciary duty claims are premised on the allegation that Defendants violated their fiduciary obligations by using forfeitures in the Plan's trust fund to pay benefits due under the terms of the Plan instead of using such forfeitures to pay expenses and/or to increase benefits.  SAC ¶¶ 211–12, 217–18.  According to Plaintiffs, had Defendants used forfeitures to pay expenses or to increase benefits, Amazon—as the Plan's settlor—would have been forced to increase its contributions to the Plan, thereby increasing participants' benefits even more.  *Id.* ¶ 220.

Plaintiffs' theory of liability is unavailing, and indeed, courts have repeatedly rejected it.  As these courts have recognized, Plaintiffs' theory is tantamount to requiring an employer to confer benefits on plan participants that appear nowhere in the plan document.  *See infra* at 7–8.  The theory also runs afoul of decades' worth of legislative and regulatory guidance, which make clear that forfeitures *can* be used to pay benefits due under the terms of a plan and need not be used to pay expenses or to increase benefits.  *See infra* at 9–11.  Finally, Plaintiffs' theory contravenes the terms of the Amazon Plan, which do not permit Defendants to use forfeitures to increase benefits.  *See infra* at 12–13.

Because Plaintiffs' theory contravenes foundational ERISA principles, the settled understanding of Congress and the Treasury Department, and the terms of the Amazon Plan, Plaintiffs' theory of liability is simply "too broad to be plausible."  *Dimou*, 2024 WL 4508450, at *9.  Their claims should be dismissed as a matter of law.

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 6

### a.    ERISA Imposes No Fiduciary Obligation to Maximize Pecuniary Benefits.

Plaintiffs contend that ERISA's fiduciary duty provisions require Defendants to provide participants with certain benefits under the Plan—*i.e.*, the payment of the Plan's administrative expenses or increased employer contributions to their accounts—that do not appear anywhere in the Plan document.  SAC ¶ 52, 57.  This theory of liability is meritless.  It is well established that "[n]othing in ERISA requires employers to establish employee benefit plans.  Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).  Instead, ERISA serves only "to protect contractually defined benefits." *Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985). The plan document defines the parties' rights and obligations, and a plan administrator complies with ERISA as long as it "administer[s]" a lawfully designed plan "as written." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008); *see also McManus v. Clorox Co.*, 2024 WL 4944363, at *6 (N.D. Cal. Nov. 1, 2024) ("[T]he purpose of [ERISA] is to 'protect contractually defined benefits' and to assure 'reliance on the face of written plan documents.'").

Here, Plaintiffs do not claim that they or any other Plan participant received less than the full amount of benefits they were promised under the terms of the Amazon Plan.  Nor do they allege that Defendants were prohibited under the terms of the Plan from using forfeitures to pay benefits.  On the contrary, Plaintiffs concede that the text of the Amazon Plan allows Defendants to use forfeitures to pay benefits due under the terms of the Plan, thereby "reduc[ing] [Amazon's] Employer Contributions" going forward.  SAC ¶ 52.

In an effort to save their claims, Plaintiffs contend that ERISA's fiduciary duty provisions (as opposed to the terms of the Plan itself) require Defendants to allocate forfeitures to increase benefits or to cover the cost of the Plan's expenses.  According to Plaintiffs, such allocations are required because they would purportedly maximize participants' take-home compensation. *Id.* ¶ 57.  But ERISA's fiduciary duty provisions impose no obligation to maximize benefits. Instead, it is black-letter law that "ERISA does not create any fiduciary duty requiring employers

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 7

to make pension plans more valuable to participants." *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011), *abrogated on other grounds* 63 F.4th 616, 624–26 (7th Cir. 2023).  For this reason, "it is neither disloyal nor imprudent under ERISA to fail to maximize pecuniary benefits" under a pension plan.  *Hutchins*, 737 F. Supp. 3d at 863; *see also Sievert*, 2025 WL 1248922, at *3 ("ERISA does not create an exclusive duty to maximize pecuniary benefits." (cleaned up)).

Because ERISA does not impose an obligation on plan administrators to maximize participants' benefits, Defendants' use of forfeitures to provide the benefits promised under the terms of the Plan—rather than to increase benefits or to pay expenses—does not form a cognizable cause of action under ERISA.  Numerous courts have reached the same conclusion, dismissing substantially identical claims involving the use of forfeitures.  *See, e.g.*, *Hutchins v. HP Inc.*, 2025 WL 404594, at *4 ("Where Plaintiff goes awry is in his implicit suggestion that acting in the interests of the plan participants and beneficiaries requires maximizing pecuniary benefits to individual plan participants ….  It does not." (cleaned up)); *Dimou*, 2024 WL 4508450, at *9 ("ERISA does not require a fiduciary to maximize pecuniary benefits," and thus ERISA's "fiduciary duty provisions do not create an unqualified duty to pay administrative expenses."); *Barragan v. Honeywell Int'l Inc.*, 2024 WL 5165330, at *4 (D.N.J. Dec. 19, 2024) (rejecting argument that "any time a fiduciary is given the option to use forfeited amounts to either reduce employer contributions or pay administrative costs, the fiduciary *must* choose the latter" (emphasis in original)); *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002, at *5 (C.D. Cal. May 2, 2025) (dismissing breach of fiduciary duty claims based on defendant's allocation of forfeitures because "there are no allegations … that Plaintiff failed to receive any benefits that she was contractually owed"); *Bozzini v. Ferguson Enters. LLC*, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025) (dismissing breach of fiduciary duty claims premised on allegation that defendants breached their fiduciary duties "[b]y exercising discretion to direct forfeited funds only for the [p]lan's benefit rather than for the benefit of [p]lan participants").

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### b.     Plaintiffs' Theory of Fiduciary Duties Contravenes Legislative and Administrative History.

Plaintiffs' theory of liability also fails because it runs afoul of "the settled understanding of Congress and the Treasury Department regarding defined contribution plans." *Hutchins*, 737 F. Supp. 3d at 862–63.  As courts have explained, "[t]he Treasury Department and Congress have long understood that forfeitures in defined contribution plans could be reallocated to the remaining participants under a nondiscriminatory formula used to reduce future employer contributions." *Id.* at 863.  Indeed, the legislative and administrative records are rife with examples of Congress and the Treasury Department not only acknowledging, but also endorsing, the use of forfeitures to reduce contributions.  For example:

- In 1963, the Treasury Department promulgated 26 C.F.R. § 1.401-7(a), which provides that "forfeitures arising from severance of employment, death, or for any other reason, *must not* be applied to increase the benefits any employee would otherwise receive under the plan." (Emphasis added.)  Instead, the regulation requires that the "amounts so forfeited *must be used* as soon as possible to *reduce the employer's contributions* under the plan." *Id.* (emphasis added).

- In 1971, the Treasury Department issued a revenue ruling explaining that 26 C.F.R. § 1.401-7(a) applies to pension plans and "does not extend to profit-sharing and stock bonus plans." Rev. Rul. 71-313, 1971-2 C.B. 203, 1971 WL 26693, at *1 (1971).  Instead, the Treasury Department clarified that, for profit-sharing and stock bonus plans, using forfeitures to offset employers' contributions is not mandatory, but rather permissive: "[P]rofit-sharing and stock bonus plans *may provide* that forfeitures be used *to reduce employer contributions* that otherwise would be required." *Id.* (emphasis added).[1]

---

[1] Notably, the requirement that forfeitures *must* be used for employer contributions remained in effect for certain defined contribution plans known as money purchase plans. *See* 88 Fed. Reg. 12,282, 12,283 (the term "pension plan" "includes a defined contribution money purchase pension plan").

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

- In 1974, Congress enacted ERISA.  Pub. L. 93-406, tit. I, § 3, 88 Stat. 829, 829 (1974).  Pursuant to the statute, Congress defined a "defined contribution plan" as a pension plan that "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account."  29 U.S.C. § 1002(34).

- In 1986, Congress amended the Internal Revenue Code.  In doing so, Congress reiterated that "forfeitures arising in any defined contribution plan … *can be ... used to reduce future employer contributions*."  H.R. Rep. No. 99-841, Vol. II at 442 (1986) (emphasis added).

- In 1991, the Treasury Department promulgated 26 C.F.R. § 1.401(m)-1(a)(2)(i), pursuant to which it defined employer "matching contributions" to include "[a]ny forfeiture allocated on the basis of employee contributions, matching contributions, or elective deferrals."

- In 2007, the Treasury Department published The Internal Revenue Manual, which once again confirmed that forfeitures in a defined contribution plan "must be allocated to the remaining participants or used *to reduce the employer contributions* that are otherwise required under the plan."  IRM § 7.12.1.9, *Forfeitures* (02-16-2017), 2007 WL 9649931, at *1 (emphasis added).

- In 2010, the IRS issued informal guidance that forfeitures "may be used to pay for a plan's administrative expenses and/or *to reduce employer contributions*."  IRS, Ret. News for Emp'rs 4 (Spr. 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf (emphasis added).

- In 2018, the Treasury Department issued final regulations that "permit forfeitures of prior contributions to be used to fund" qualified matching contributions ("QMACs") and qualified non-elective contributions ("QNECs").  Definitions of

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Qualified Matching Contributions and Qualified Nonelective Contributions, 83 Fed. Reg. 34,469, 34,470 (Jul. 20, 2018). This regulation was necessary because, prior to its promulgation, applicable regulations had precluded using forfeitures to fund QMACs and QNECs. *Id.*

- In 2023, the Treasury Department proposed a new regulation stating that defined contribution plans must provide that forfeitures "will be used for one or more of the following purposes: (i) To pay plan administrative expenses; (ii) *To reduce employer contributions under the plan*; or (iii) To increase benefits in other participants' accounts in accordance with plan terms." Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12,282, 12,285 (Feb. 27, 2023) (emphasis added). In other words, just two years ago, the Treasury Department affirmed the permissibility of Defendants' allocation of forfeitures.

Although these authorities do not necessarily foreclose Plaintiffs' claims, they are nonetheless "relevant authorities in evaluating the[ir] plausibility." *Dimou*, 2024 WL 4508450, at \*9. With good reason. It is well established that Congress's "failure to revise or repeal [an] agency's … longstanding administrative interpretation" of a statute "is persuasive evidence that the interpretation is the one intended by Congress." *CFTC v. Schor*, 478 U.S. 833, 846 (1986); *see also Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884, 889 (9th Cir. 2017) ("That Congress has made changes to the [disputed] provision without disturbing the explicit agency and judicial decisions is not without significance."). That Congress has repeatedly amended both ERISA and the Tax Code—yet has never acted to proscribe the use of forfeitures to reduce employer contributions—demonstrates the implausibility of Plaintiffs' theory. *See, e.g.*, *Hutchins*, 2025 WL 404594, at \*4 (dismissing breach of fiduciary duty claims "in light of the long history of using forfeitures to reduce employer contributions"); *Dimou*, 2024 WL 4508450, at \*9

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 11

Davis Wright Tremaine LLP
Law Offices
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(dismissing breach of fiduciary duty claims because plaintiff's theory was contrary to "Treasury regulations and settled rules regarding the use of forfeitures in defined contribution plans").[2]

### c. Plaintiffs' Theory of Fiduciary Duties Would Force Defendants to Violate the Terms of the Plan.

Plaintiffs' theory of fiduciary duties is particularly unpersuasive insofar as Plaintiffs argue that Defendants should have used forfeitures to increase participants' benefits under the Amazon Plan—beyond the amounts that they were promised pursuant to the terms of the Plan document. SAC ¶ 54.

It is beyond dispute that ERISA "requires fiduciaries to follow plan documents so long as they do not conflict with ERISA." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424 (2014); *see also* 29 U.S.C. § 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties … in accordance with the documents and instruments governing the plan …."). Here, the Amazon Plan does not permit Defendants to use forfeitures to increase benefits. Instead, the Plan specifies that forfeitures shall be used for only one of three purposes: (1) to "reduce future Employer Contributions"; (2) to "reduce Plan administrative fees and expenses"; or (3) to "restore Accounts of reemployed Former Participants." SAC ¶ 52; *see also* Wu Decl., Ex 1 § 9.5; Ex. 2 § 9.5; Ex. 3 § 9.5; Ex. 4 § 9.5; Ex. 5 § 9.5. Using forfeitures to *increase* benefits is not permitted under the terms of the Plan.

Plaintiffs do not allege that the terms of the Amazon Plan "conflict[] with ERISA," *Dudenhoeffer*, 573 U.S. at 424, nor could they. Both Congress and the Treasury Department have expressly endorsed the use of forfeitures to fund benefits (and thereby reduce employer

---

[2] *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *3 (S.D. Cal. May 24, 2024), and *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024), are distinguishable. In *Perez-Cruet*, the court denied defendants' motion to dismiss, but its opinion did not address the points that Defendants raise in this motion, and indeed, other courts have referred to *Perez-Cruet*'s analysis as "conclusory" and "[un]persuasive," *Hutchins*, 737 F. Supp. 3d at 862 n.1. In *Rodriguez*, the court denied defendants' motion to dismiss based on allegations that Intuit violated its plan's terms by using forfeitures to reduce employer contributions. 744 F. Supp. 3d at 946–47. Here, there are no allegations that Defendants' use of forfeitures to provide benefits violated Plan terms. *See generally* SAC.

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 12

contributions), *see supra* at 9–11, and Plaintiffs acknowledge that the use of forfeitures to reduce contributions or to pay expenses is permissible under ERISA, SAC ¶ 56; *see also Sievert*, 2025 WL 1248922, at *5 ("[A] plan sponsor's decision to allocate forfeitures toward reducing its own employer contributions … is not sufficient to state a claim for breach of fiduciary duty … under ERISA."). Because the Amazon Plan does not conflict with the federal statute, Defendants are required to follow it. They cannot grant participants additional benefits in violation of Plan terms.

### 2.    Plaintiffs Have Alleged No Nonconclusory Facts to Support Their Breach of Fiduciary Duty Claims.

Even if Plaintiffs' theory of liability were not facially overbroad, Plaintiffs' breach of fiduciary duty claims should be dismissed because they have not pled any nonconclusory facts in support of them.

#### a.    Plaintiffs Have Pled No Facts that Plausibly Support Their Disloyalty Claim.

Plaintiffs' SAC contains only a *single* factual allegation in support of their disloyalty claim. Specifically, Plaintiffs claim that Defendants face a "conflict of interest" in administering the Plan because they purportedly have an interest in allocating forfeitures in a way that reduces Amazon's "obligation" to make "matching contributions" to the Plan. *See, e.g.*, ¶¶ 45, 56, 62. This allegation does not withstand scrutiny.

First, there is no plausible "conflict of interest" in this case. It is well established that employers, like Amazon, who sponsor ERISA plans can—and do—wear two hats in the ERISA context: a "fiduciary hat," which the employer wears when administering the plan for the benefit of plan participants, and a "settlor hat," which the employer wears when performing settlor functions, such as establishing, designing, amending, funding, or terminating the plan. *Acosta v. Brain*, 910 F.3d 502, 517 (9th Cir. 2018). Critically, plan funding decisions are *settlor* in nature, which means that an employer can decide how much money to contribute to a plan in its own interest, without regard to the interests of plan participants. *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 367 (2d Cir. 2014) (explaining that "decisions relating to the timing and amount of

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

contributions" are settlor, not fiduciary, decisions); *Petroff v. Ret. Benefit Plan of Am. Airlines, Inc.*, 2015 WL 13917970, at \*14 (C.D. Cal. July 28, 2015) ("Funding a plan is a settlor function."). Because plan funding decisions are settlor in nature, there is no "conflict of interest" when an employer decides how much to contribute to a plan. The employer can make this decision in its own interest.

Second, Plaintiffs are wrong insofar as they argue that Amazon has an "obligation" to contribute a set amount of money to the Plan regardless of the presence of forfeitures in the Plan's trust fund. To the contrary, the Plan specifies that Amazon's "Matching Contributions" on behalf an eligible participant shall be "equal to 50% of such … Participant's Elective Deferral Contributions," with a maximum contribution amount not to "exceed 4% of such Participant's Compensation for such Plan Year." Wu Decl., Ex. 1 § 6.1(b); Ex. 2 § 6.1(b); Ex. 3 § 6.1(b); Ex. 4 § 6.1(b); Ex. 5 § 6.1(b). Importantly, the Plan defines "Matching Contributions" to include "any forfeiture amounts applied as Matching Contributions." *Id.* In other words, Amazon's "Matching Contributions" to the Plan include forfeitures that already exist in the Plan's trust fund. This definition is consistent with the regulatory definition of the term, which similarly contemplates that matching contributions can be funded through forfeitures that exist in the plan. *See* 26 C.F.R. § 1.401(m)-1(a)(2)(i) (matching contributions include "[a]ny forfeiture allocated on the basis of employee contributions, matching contributions, or elective deferrals").

Based on these definitions, it is clear that Amazon's only funding obligation is to provide "Matching Contributions" that take into account the existence of forfeitures (that is, amounts that Amazon previously contributed) in the Plan's trust fund. Amazon has never committed itself to contribute a set amount of *new money* to the Plan each year, as Plaintiffs' SAC presumes. Because Amazon does not have an "obligation" to fund the Plan at a level exclusive of forfeitures, Defendants' use of forfeitures to "reduce Employer Contributions" does not relieve Amazon of any "obligation" to the Plan. Other courts have reached the same conclusion. *See, e.g.*, *Hutchins*, 737 F. Supp. at 867 (rejecting argument that employer's future contributions are a "debt" owned to the plan because the argument "is based on a distinction between 'new money'

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 14

that HP contributes to the Plan … and 'old money' that HP has already contributed to the Plan that is without support in the terms of the Plan, the text of ERISA, or case law").[3]

### b. Plaintiffs Have Pled No Facts in Support of Their Imprudence Claim.

In their SAC, Plaintiffs allege that Defendants violated their duty of prudence to the Plan by "fail[ing] to undertake any reasoned and impartial decision-making process to determine whether using" the forfeited funds in the Plan "to reduce Amazon's own contribution[s] … was in the best interest of the Plan's participants." SAC ¶ 219. This allegation merely restates the elements of a duty of prudence claim. Indeed, multiple courts have found such allegations insufficient to state a cause of action. *See, e.g.*, *Hutchins*, 2025 WL 404594, at \*7 (holding that allegation that defendants "utilized an imprudent and flawed process" to allocate forfeitures was insufficient to "invite a plausible inference of wrongdoing").

Indeed, it is unclear what an "investigation" into Amazon's ability or willingness to increase its contributions to the Plan would even accomplish. As explained above, "decisions relating to the timing and amount of contributions" are settlor, not fiduciary, decisions. *Coulter*, 753 F.3d at 367. Because settlor decisions do not implicate fiduciary duties, Amazon is entitled to make decisions about Plan funding in its own interest, without regard to the interests of Plan participants. For this reason, even if Defendants conducted an investigation and determined that Amazon possessed adequate funds to increase its contributions to the Plan, Amazon—acting in its settlor capacity—would have no obligation to actually contribute such additional funds.

---

[3] The court's decision in *McManus v. Clorox Co.*, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025), is distinguishable. There, the court determined that plaintiff had plausibly alleged a conflict of interest based on defendants' purported incentives to reduce "Clorox's non-elective contributions to the Plan." *Id.* at \*3–4. The Clorox Plan, however, did not define contributions to include forfeitures, suggesting that Clorox might be required to contribute a set amount of new money to the plan each year. *Id.* Here, by contrast, the Amazon Plan makes clear that "Matching Contributions" include "forfeiture amounts," refuting any suggestion that Amazon was required to contribute a defined amount of new money to the Plan each year. Wu Decl., Ex. 1 § 6.1(b); Ex. 2 § 6.1(b); Ex. 3 § 6.1(b); Ex. 4 § 6.1(b); Ex. 5 § 6.1(b).

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 15

Because "Plaintiff[s] fail[] to plausibly allege that a 'proper' investigation would have led to a different outcome," their claims should be dismissed. *Hutchins*, 2025 WL 404594, at *7.

### c.    Defendants' Purported Failure to Allocate Forfeitures by Year-End Does Not Support a Claim.

Finally, Plaintiffs contend that, regardless of the *substance* of Defendants' allocation decisions, Defendants violated their fiduciary duties based on the *timing* of those decisions. Specifically, Plaintiffs contend that Defendants violated their fiduciary duties by "maintain[ing]" forfeitures "in an unallocated account at the end of the Plan year to be carried over for use in the following calendar year." SAC ¶ 225. This argument, too, is unavailing.

Plaintiffs' alternative theory of breach is based on IRS Revenue Ruling 80-155, which Plaintiffs contend "requires all money in defined contribution plans to be allocated to Plan Participants annually," *id.* ¶ 77, and IRS Publication 4278-B, which states that the "[Internal Revenue] Code does not authorize forfeiture suspense accounts to hold unallocated monies beyond the plan year in which they arise," IRS Pub. 4278-B, *Ret. News for Emps.* (Spring 2010), *available at* https://www.irs.gov/pub/irs-pdf/p4278.pdf. Both of these authorities, however, are tax-qualification standards. They determine whether a plan receives certain tax benefits, but they do not set rules applicable to ERISA. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1117–18 (9th Cir. 2000) (holding that a plan's failure to comply with a tax-qualification standard did not result in a violation of ERISA). Nor do these standards provide participants with a private cause of action. *Id.*

Plaintiffs try to shoehorn these tax-qualification standards into ERISA by arguing that Defendants' failure to adhere to the standards put the Plan's tax-qualified status at risk, thereby deviating from "the minimum standard of care" required by ERISA. SAC ¶¶ 77, 79. But Plaintiffs do not allege that the Plan is not tax-qualified, and indeed, the Plan's tax-qualified status was never in jeopardy. This is because the Treasury Department has proposed a new regulation that (i) rescinds IRS Publication 4278-B, and (ii) clarifies plan administrators' obligations under IRS Revenue Ruling 80-155. The Treasury Department has specified that

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 16

forfeitures in a plan need *not* be used in the plan year in which they are incurred but may rather be used "no later than 12 months *after* the close of [such] plan year."  88 Fed. Reg. 12,282, 12,284 (emphasis added).  Plan administrators are permitted to rely on this regulation, even for plan years that pre-date the regulation's effective date.  *Id.*  In other words, plan administrators are now allowed to "maintain[]" forfeitures "in an unallocated account at the end of [a] Plan year to be carried over for use in the following calendar year."  SAC ¶ 225.  This is precisely what Defendants have allegedly done in this case.

Because the timing of Defendants' allocation decisions never put the Plan's tax-qualified status at risk, Plaintiffs' breach of fiduciary duty claims are, once again, implausible.

### 3.    Plaintiffs' Theory Does Not Implicate Defendants' Fiduciary Duties.

Separate and apart from the arguments above, Plaintiffs' breach of fiduciary duty claims fail for the independent reason that Plaintiffs' claims do not implicate Defendants' fiduciary duties.  As the SAC makes clear, the crux of Plaintiffs' claims is that Defendants breached their fiduciary duties by using forfeitures "to reduce employer contribution[s]" to the Plan.  SAC ¶ 199.  Decisions about a company's "contribution[s]," however, are *settlor* decisions that do not implicate fiduciary duties.  Because Plaintiffs do not challenge a fiduciary decision in their complaint, their breach of fiduciary duty claims should be dismissed.

### a.    Funding a Plan Is a Settlor, Not a Fiduciary, Function.

It is well established that employers who sponsor ERISA plans exercise both fiduciary and nonfiduciary duties with respect to the plan.  The law therefore recognizes that employers wear "two hats" in the ERISA context: a "fiduciary hat," which the employer wears when administering the plan, and a "settlor" hat, which the employer wears when performing settlor functions, such as establishing, designing, amending, funding, or terminating the plan.  *Acosta*, 910 F.3d at 517.

Critically, ERISA's fiduciary duty provisions apply only when the employer is wearing its "fiduciary hat."  *See, e.g.*, *Hall v. Hill Refrigeration, Inc.*, 36 F. Supp. 2d 1185, 1189 (C.D. Cal. 1999) ("[A]n ERISA fiduciary is only liable as a fiduciary when it is acting as one.").

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Actions taken by the employer in a settlor capacity do not give rise to fiduciary liability. *Spink*, 517 U.S. at 890; *Reynolds v. Edison Int'l*, 238 F.3d 430, 430 (9th Cir. 2000). For this reason, the "threshold question" in any ERISA case asserting a breach of fiduciary duty claim is "not whether the actions of some person … adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Pegram*, 530 U.S. at 226.

As explained above, "decisions relating to the timing and amount of contributions" to the plan are settlor, not fiduciary, responsibilities. *Coulter*, 753 F.3d at 367. It therefore follows that decisions about whether to fund a plan—and by what amount—do not give rise to fiduciary liability. *See, e.g.*, *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Lcl. 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) (holding that corporate officer "who chooses to pay corporate obligations in lieu of employer contributions to an ERISA plan does not breach a fiduciary duty"); *see also Hall*, 36 F. Supp. 2d at 1190 (rejecting breach of fiduciary duty claim because decision "to modify the employer contribution rate [was] outside the scope of [defendants'] administrative and fiduciary duties"). Because Plaintiffs challenge a decision "to reduce the Company's … contribution[s]" to the Plan—not a decision that implicates Defendants' fiduciary duties—their breach of fiduciary duty claims should be dismissed.

### b. Plaintiffs' Invocation of Defendants' "Allocation" Decisions Does Not Cure Their Pleading Deficiencies.

Recognizing that plan funding decisions do not give rise to fiduciary liability, Plaintiffs attempt to recast Amazon's funding decisions as fiduciary in nature by suggesting that Defendants' "use of forfeited funds" somehow *induced* the Company to "reduce the Company's … contributions" to the Plan. SAC ¶ 220. This argument does not withstand scrutiny. A fiduciary does not control a company's decision to contribute assets to a plan; instead, the company makes funding decisions solely in its settlor capacity. *Pegram*, 530 U.S. at 225 ("ERISA … require[s] … that the fiduciary with two hats wear only one at a time."); *In re*

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Citigroup ERISA Litig.*, 2009 WL 2762708, at *11 (S.D.N.Y. Aug. 31, 2009) (refusing to impose duty on ERISA fiduciary that would intrude on sponsor's duty as settlor).

Plaintiffs' theory also conflicts with the terms of the Amazon Plan.  Plaintiffs claim that Defendants, acting as fiduciaries, determine whether forfeitures should be used to pay the Plan's expenses, but the Plan document says precisely the opposite.  Specifically, the Amazon Plan specifies that the "Employer"—acting in its settlor capacity—decides whether to "pay any or all [of the Plan's] expenses" or whether such expenses should "be paid [instead] from the assets of the Trust."  Wu Decl., Ex. 1 § 16.5; Ex. 2 § 16.5; Ex. 3 § 16.5; Ex. 4 § 16.5; Ex. 5 § 16.5.  Other courts have interpreted similar plan provisions to affirm the reality that decisions about the use of forfeitures to pay expenses are settlor, not fiduciary, decisions.  In *Hutchins*, for example, the court interpreted substantially similar plan language to mean that an employer "*acting as settlor* determines whether, in a given year, Plan expenses will be paid by [the employer] or charged to Plan participants' accounts." *See Hutchins*, 2025 WL 404594, at *4.  While the plan's fiduciary might work to implement this decision, "[the employer] (as fiduciary) will only use … forfeitures to pay Plan expenses if [the employer] (as settlor) decided that year that the Plan administrator should use at least some forfeitures to pay Plan expenses." *Id.*  The same holds true in this case.

### 4. Plaintiffs Have Not Alleged a Plan Injury.

Finally, Plaintiffs' breach of fiduciary duty claims under Section 502(a)(2) should be dismissed because they have failed to allege a plausible injury to the Plan.

To state a claim for breach of fiduciary duty under Section 502(a)(2), a plaintiff must allege an injury to the plan.  It is not enough that a plaintiff alleges some sort of individual injury, separate and distinct from a plan injury. *See, e.g.*, *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) ("§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries."); *Munro v. Univ. of S. Calif.*, 896 F.3d 1088, 1092–93 (9th Cir. 2018) ("[A] plaintiff bringing a suit for breach of fiduciary duty … seeks recovery only for injury done to the plan."); *In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp.

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

2d 1002, 1043 (C.D. Cal. 2011) ("To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege in the complaint that the fiduciary injured the benefit plan or otherwise jeopardized the entire plan or put at risk plan assets." (cleaned up)).

Here, Plaintiffs fail to allege any cognizable injury to the Amazon Plan. Plaintiffs claim that Defendants should have allocated forfeitures in the Plan differently, using forfeited benefits to pay the Plan's expenses or to increase benefits. The allocation of benefits within a plan, however, does not give rise to a plan injury. To the contrary, allegations that a plan should have "allocated benefits differently" do not establish "that the plan itself has suffered any injury." *Diaz v. Westco Chems., Inc.*, 2023 WL 3615663, at *1 (9th Cir. May 24, 2023).

In the alternative, Plaintiffs allege that Defendants' actions harmed the Plan by inducing the Company to make "fewer contributions that would otherwise have increased Plan assets." SAC ¶ 220. This argument fails for at least two reasons.

First, as explained above, plan funding decisions are settlor in nature and do not give rise to fiduciary liability. *See supra* at 13–15. Accordingly, a settlor's decision to reduce its contributions to a plan cannot supply the injury necessary to prove a breach of fiduciary duty claim.

Second, even if a reduction in contributions were a cognizable injury, Plaintiffs have not plausibly alleged that Defendants' actions *caused* the Company to reduce its contributions. Instead, Plaintiffs speculate that had Defendants made a different decision about how to allocate forfeited benefits within the Plan, the Company would have made a different decision about how much money it would contribute to the Plan. Plaintiffs, however, have failed to plead any facts linking the two decisions. Theories of liability that rely on mere speculation as to what a plan sponsor, in its role as a settlor, might do in response to a particular course of action are insufficient to state a cause of action. *See, e.g.*, *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 457 (3d Cir. 2003) (holding that "notion that the firm would have passed [certain] savings on to its employees in the form of a higher salary or additional benefits[]" was "far too speculative to serve as a basis for a claim of individual loss"); *Glanton ex rel. ALCOA*

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 20

*Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (affirming dismissal of ERISA case for insufficient allegation of injury where "any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or predict" (cleaned up)).

**B.    Plaintiffs Fail to State a Claim for Violation of ERISA's Prohibited Transactions Provisions.**

In addition to their breach of fiduciary duty claims, Plaintiffs bring one claim under ERISA § 406(a)(1), which prohibits an ERISA fiduciary from "caus[ing] the plan to engage in a transaction" that "he knows or should know … constitutes a … (A) sale or exchange, or leasing, of any property between the plan and a party in interest" or "(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."  29 U.S.C. § 1106(a)(1).  Plaintiffs also bring a claim under ERISA § 406(b)(1), which prohibits an ERISA fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."  *Id.* § 1106(b)(1).  Both of these claims fail for multiple reasons.

First, to state a claim under ERISA § 406, a plaintiff must allege that a defendant was acting in a fiduciary capacity with respect to the contested transaction.  *Spink*, 517 U.S. at 889–90.  Here, because Plaintiffs' allegations about the Company's decision to reduce its contributions to the Plan implicate settlor—not fiduciary—responsibilities, Plaintiffs' claims under § 406 fail to state a cause of action.  *See, e.g.*, *Black v. Greater Bay Bancorp. Exec. Supp. Comp. Benefits Plan*, 2017 WL 8948732, at *9 (N.D. Cal. Jan. 18, 2017) (actions by company to "save itself from having to make Plan contributions" did not violate ERISA § 406).

Second, to the extent that Plaintiffs complain about Defendants' allocation of forfeitures within the Plan, Plaintiffs have failed to state a viable claim.  As controlling law makes clear, ERISA § 406 is concerned only with "commercial bargains," *Wright*, 360 F.3d at 1101— specifically, bargains that "present a special risk of plan underfunding because they are struck with plan insiders," *Spink*, 517 U.S. at 893.  Allocations of assets within a plan are not commercial transactions, and thus they do not implicate ERISA § 406.  For this reason, courts

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

routinely dismiss prohibited transactions claims based on the allocation, or reallocation, of plan assets, including forfeitures. *See, e.g.*, *Hutchins*, 2025 WL 404594, at *8–9 (dismissing § 406(b)(1) claim based on allocation of forfeitures because plaintiff failed to allege a "transactional 'dealing' with account assets"); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450, at *11 (dismissing § 406(b)(1) claim based on allocation of forfeitures because "[a]n intra-plan transaction, like forfeiture reallocation, is unlike a sale or leasing of property to a third-party"); *Madrigal*, 2025 WL 1299002, at *7 (dismissing §§ 406(a)(1) and (b)(1) claims because "Plaintiff fails to identify a transaction that falls under the scope of the prohibited transactions rule"); *see also Chao v. Hagemeyer N. Am., Inc.*, 2006 WL 8443663, at *6–7 (D.S.C. Oct. 20, 2006) (dismissing § 406 claims premised on "exchanges or 'reallocations' between accounts" within a plan).

Third, Plaintiffs' prohibited transactions claims fail because they effectively challenge Defendants' use of forfeitures to pay benefits due under the terms of the Plan. It is well established that "the payment of benefits is … not a 'transaction' in the sense that Congress used that term" in § 406. *Spink*, 517 U.S. at 892–93. Accordingly, courts routinely dismiss prohibited transactions claims that challenge the payment of benefits to participants. *See, e.g.*, *Hutchins*, 2025 WL 404594, at *8 (dismissing § 406(b)(1) claim based on allocation of forfeitures because "using plan assets to pay plan benefits is not a 'transaction' under the prohibited transactions of ERISA"); *Sievert*, 2025 WL 1248922, at *6 (dismissing § 406(a)(1) claim because "the reallocation of Plan assets to provide benefits to employees as matching contributions is not a prohibited transaction"); *see also Chao*, 2006 WL 8443663, at *9 (dismissing claims under § 406 because "[a] distribution of retiree benefits to a plan participant … cannot be the basis of a cause of action pursuant to ERISA § 406").

Finally, just like the breach of fiduciary duty claims discussed above, Plaintiffs' claims under ERISA § 406 are simply "too broad to be plausible." *Dimou*, 2024 WL 4508450, at *9. If the allocation of forfeitures to cover employer contributions is a prohibited transaction under ERISA, then such allocations would *always* violate § 406, even though Treasury regulations

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 22

specify that such allocations are permissible and, in some instances, required. *See supra* at 9–11. Plaintiffs cannot square their position with the "settled understanding of Congress and the Treasury Department" regarding defined contribution plans, *Dimou*, 2024 WL 4508450, at \*9, and thus their claims should be dismissed as a matter of law, *see, e.g.*, *Bozzini*, 2025 WL 1547617, at \*2 (dismissing prohibited transactions claim based on allegation that defendants violated ERISA by "taking the funds in the [f]orfeiture account every year to be used for [their] own benefit").

## V.    CONCLUSION

For all of these reasons, Plaintiffs' SAC should be dismissed.

*I certify that this memorandum contains 8,072 words, in compliance with the Local Civil Rules.*

DATED June 5, 2025                    DAVIS WRIGHT TREMAINE LLP


By *s/ Kenneth E. Payson*
    Kenneth E. Payson, WSBA #26369
    Theo A. Lesczynski, WSBA #59780
    920 Fifth Avenue, Suite 3300
    Seattle, WA  98104-1610
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail: kenpayson@dwt.com
           theolesczynski@dwt.com

COVINGTON & BURLING LLP

Laura Flahive Wu*
Robert Newman*
850 Tenth Street, NW
Washington, DC  20001
Telephone: (206) 662-5105
E-mail: lflahivewu@cov.com
       rnewman@cov.com

William O'Neil*
Lelia A. Ledain*

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 23

620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Email: woneil@cov.com
        lledain@cov.com

*admitted pro hac vice*

**Attorneys for Defendants**

DEFS.' MOT. TO DISMISS PLS.' 2D AMEND. COMPL.
(2:24-cv-02164) - 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax